234094 and 234151, U.S. v. Gordon and U.S. v. Brown. Mr. Wilson. Thank you, Your Honor. Scott Wilson appearing on behalf of Mr. Brown and Mr. Gordon. I acknowledge that I'm facing a burden here. You're asking this court to declare a federal statute unconstitutional on its face. But I would say that the Supreme Court has set up a sort of unique way that these cases have to be analyzed that puts the government to its burden. In cases where the Second Amendment rights of a citizen are being restricted, the Supreme Court has said that the government bears the burden to show that this restriction has historical analogs basically from the 18th century. Counsel, before you get into that piece of the analysis, what is your understanding of this facial challenge standard that you have to satisfy here? In other words, is it that just one permissible application defeats a facial challenge? What is your understanding of a facial challenge in the Second Amendment context? Well, yes. If there is a permissible application, then a facial challenge fails. But I would say it's not just like if there's people who are dangerous who could get guns restricted. I mean, Mr. Rahimi, for example, the court didn't stop and say, well, look how horrible Mr. Rahimi is. No. Well, they did comment that there's your one example right there, didn't they? Well, they did in the sense that, well, no. I mean, all they said was, yes, this is part of the problem. But then they went on to do the facial analysis. They didn't say, well, because bad people can be restricted under this thing, it's okay. Well, the important point of Rahimi was saying what sort of constraints are consistent with the Second Amendment. That was a very important issue and maybe a little surprising to some people. Justice Thomas was apparently surprised. So they had a reason to write the opinion, even though Mr. Rahimi clearly satisfied the Second Amendment requirements for a constraint. Well, no. To be clear, Mr. Rahimi's conduct isn't what made it okay. It was the fact that the statute he was prostituted under on its face, as the elements of the offense, were allowed under the Second Amendment. So that's the argument we're making. I don't disagree on that point. I just didn't express it well, I guess. Sure, sure. Okay, go ahead. So the question before us, then, is we have a sort of limited universe in which to talk. And that's why the case law that has been presented to the court and discussed in the court is fairly limited. It's basically, what does Rahimi mean in the context of Subsection 2 as opposed to Subsection 1? And the initial thing is, well, Subsection 2 does not do the thing that the court pointed to in Subsection 1 that made it okay, which is a finding that a particular person constitutes a future danger. And that was the basis for finding that the restriction was okay. I'm not sure it's the finding. It was the difference between 1 and 2 was that in 1, it's an express finding in the order. Here we have an order that doesn't make an express finding. But the court had to make such a finding. That's the question. Did the court have to make such a finding to issue that order? And if that were the case, Rahimi's satisfied. Do you agree? If a court has to make that finding. But there's no basis to hold that in order to proceed against a defendant under Subsection 2, that a finding is required. Because it's not an element of the offense. And it can't, and it isn't. So what is required? What, in your view, is required? Section 2 doesn't talk about findings. So what is required? Under Section 2, all it means is that there's an order which says you can't commit an act of violence in the future against a domestic partner. But that doesn't imply a finding that you are likely to do so. And the deficit is made up by this assumption that common law principles of injunctive relief are going to apply. The two circuits that I'm up against here, I recognize I'm up against two other circuits, and I'm asking for a circuit split here. They rely on basically a general proposition about the common law of injunctive relief. Are they wrong about that proposition? Well, no, they're not wrong about the fact that the common law provides that. What they're wrong about is the applicability of the common law to these types of injunctions. The government has cited no law saying that this general proposition is applicable in the context of these state statutory schemes providing for domestic violence protective orders. There's no reason to believe that that presumption applies. Why not? I mean, I agree with you that there's no case that's been directly presented. But why doesn't that just make sense to understand the applicability of the common law here? Because those statutory schemes were meant to avoid those restrictions. If you look at the way they're set up, we know that common law doesn't apply. There's another common law principle, for example, that you can't get an injunction against a criminal act in the future. Wright and Miller says that too. But it doesn't apply. I'm looking at the statutory language.  And under 6031A, the court can issue an ex parte protective order against the person that appears from the petition. That domestic abuse has occurred or is substantially likely to occur. You don't need to rely on the common law. The statute says you can't issue a protective order without those findings. Well, it's an or. So you can issue a protective order if an act happened in the past without respect to a finding as to what might happen in the future. Also, these protective orders are very broad in terms of their definition of what domestic violence is. A lot of nonviolent conduct is included in every state statute that I've ever seen. Certainly anything that's been quoted here. Is that true? And in Utah? Absolutely. Domestic abuse? In Utah, you can be a domestic abuser if you mess with their phone. And in the Kentucky one that the Fifth Circuit talks about, in that state, you can be a domestic abuser if you threaten somebody's pet. What about 78B7-6042, which requires a finding that the respondent's use or possession of a weapon may pose a serious threat of harm? Yes. So if there was actually that finding, then they could be prosecuted under subsection 1. Well, if the order was under that statute, 78B7-6042, then the court, unless the court was acting illegitimately, needed to find that. You don't have to put that in the order. Well, I don't know where a finding exists other than in an order. Well, no. You make a finding, and then you issue an order. And you don't have to state in the order all the facts you found. Where are we making this finding, then? I mean, a finding doesn't just exist in a judge's head. And that's part of the problem also with this presumption under the common law. The government posits a presumed finding. There's no such thing in the law as a presumed finding. It just means the court was satisfied that the finding was supportable, and two, doesn't require an explicit finding the way that one does. I mean, that's kind of asking, you know, this isn't coming from my head. This is, you know, I'm looking at Perez-Golan's analysis in the Fifth Circuit, and I'm just wondering. Do you think once, every once in a while, a judge might have made the required finding to issue that order so the statute is not? Again, is it a required finding? If it is, then you can be prosecuted under Subsection 1. And, you know, so if this court finds that Subsection 2 is constitutional, only if it qualifies also for prosecution under Subsection 1, it's a fairly limited constitutionality. But that's what I'm saying. Could you speak to what we should find unpersuasive about the Fifth Circuit's analysis? Sure. First of all, they do rely on this idea of a, you know, some sort of freestanding common law presumption, which doesn't apply. And nobody says that it applies in domestic violence protective orders. And relies on this idea of an implied finding, which I don't understand what that means. If a finding is required, then it would be on the record. And I would say, I mean, imagine you have an injunction. And in order to issue an injunction, you have to find A, B, and C. And a judge, in issuing the injunctions, finds A and B. On appeal, does the court of appeals say, oh, well, they got A and B. They probably were going to presume that they found C. No, it's like, well, it's an illegal order. Send it back for more findings. You have to actually make those findings. And if that common law principle applied, then you would have to have findings as to future dangerousness in every order. It's definitely like you're collaterally attacking the Utah court's finding. No, I'm— If that was a proper—I'm sorry, not the court's finding, but their court's order. We have to presume. We're not—you can't challenge the Utah court's issuance of that order. We have to presume that that was a proper order. Yes. And if it was a proper order, then it had to be predicated on this kind of finding. No. It did. The statute requires— No, no, no. I'm sorry. Yeah. If the particular order under state law requires a finding of future dangerousness, it would qualify under subsection 1. What I'm saying is the orders in this case, which only contained findings of don't do harm in the future— But it's not— Doesn't require those findings. It doesn't require them to be stated in the order. That's like saying every judgment has to include all the fact findings the judge makes. So the hypothetical is at a hearing, the judge makes findings orally on the record and then issues an order without those findings in it. Is that what you're talking about? I'm not sure he has to make it on the record to make it a legitimate judgment. If somebody—if you're challenging it—it seems to me you're challenging the legitimacy of the Utah court order when you say it could have been issued without this finding. I'm saying that under Utah law you don't have to make that finding and that there's no reason to believe that you have to make that finding. Utah law doesn't require it. So what, in your view, does Utah law require? Utah law requires the finding that at some point in the past you committed an act of domestic abuse, broadly defined, as I've said. That's all it requires. And so there's no requirement of this finding. That's one of the statutes. That's one of the two statutes. That's one of the grounds. I would just say, also, as to the Fifth Circuit decision, the point is fairly clear in their sort of hypothetical under the Kentucky law. They say, well, you know, what if there's a judge who makes a finding as to future violence and then it isn't included in the order? And again, this is what I'm asking. What is a finding? A finding is something that is on the record. It's not just some, you know, ethereal thing in a judge's head. It's either required or it isn't. If it is required, then you make it on the record and you can be prosecuted under Subsection 1. I cited in my opening brief a case where, in fact, an oral finding was determined to be sufficient for prosecution under Subsection 1, an oral finding that was not actually explicit in the order. So all I'm saying is Subsection 2 does not require explicit findings, and explicit findings is the only kind of findings that exist in the law. So why does Subsection 2 exist? Well, it was the result of a congressional judgment that in the context of domestic violence or domestic abuse or domestic disputes, guns are a bad thing to have. And that is a legislative judgment that you and I can agree with wholeheartedly. But the Supreme Court has said we don't care about legislative judgments. We care about history. And as the Supreme Court said, in its ruling, the tradition distinguishes between citizens who have been found to pose a credible threat from those who haven't. And what I'm saying is Subsection 2 doesn't distinguish between those who have been found to have been a credible threat and those who haven't. I can see I'm out of time. Thank you very much. Unless there's any further questions. Thank you. Mr. Jack? May it please the Court, Nathan Jack for the United States. The only question for this Court to answer is whether Subsection 2 is unconstitutional in every possible application. The answer to that has to be no. Because in many applications, Subsection 2 comports with the Second Amendment principle that the government may disarm those who pose a credible threat to the safety of another. And we can see that in at least three ways. First, as applied under Utah law, which requires either that domestic violence or abuse has occurred or a substantial likelihood that it will occur. We can see that as Subsection 2 applies more generally because enjoining the use of force entails, in many instances, a risk that such force will be used. And finally, we can see that as applied to a category of persons that Congress has deemed dangerous or pose a special danger of misuse. And I'll take each of those in turn. But first, my friend's argument seems to boil down that Rahimi requires some type of finding of explicit future dangerousness. And that is not the Second Amendment principle that Rahimi identified. Well, how can we be satisfied that the defendant poses an actual threat for purposes of 2? I mean, 2 doesn't require a finding. What are we relying on to comport with 2? Yeah, so in each of these factors. So let's take Utah law, for example. So for a cohabitant abuse protective order under Utah law, there must be either domestic abuse has occurred or a substantial likelihood that it will occur. Now, whether that finding actually makes it into the order, either prong shows that the defendant poses a credible threat to the safety of another. Well, to Judge Hartzell's point, do we just assume that we have an order under a statute under Utah law that requires these things? And so therefore, we proceed into the 2 analysis, assuming those findings have been made or supported at some point? Absolutely. This is not a form for collaterally attacking the protective order. But opposing counsel said domestic abuse doesn't need to be violent under Utah law. And that is a straw man. There may be some applications where it's broader. There may be some applications based on past contact. The only question for this court is, in at least one application of a court finding that domestic violence has occurred, does that defendant pose a credible threat to the safety of another? And I think we've got two great examples here of both Gordon and Brown. A Gordon who threatened to kill his former partner. And a Brown who threw his girlfriend to the ground, got on top of her, punched her in the face, tried dragging her out of the apartment by her clothes. These are dangerous men. These are men who pose a credible threat to the safety of another. And even though a explicit judicial finding of future dangerousness didn't make it into the order, the application of subsection 2 comports with the Second Amendment principle in these two cases. That these men pose a credible threat to the safety of another. And that is enough to defeat these facial challenges. So because under Utah law, as applied under Utah law, in many instances, under either of those prongs, the defendant will pose a credible threat to the safety of another. But again, we can look more generally to subsection 2, which enjoins the use of physical force. And as the Fifth Circuit explained in Perez-Gayon, again, in many instances, that will demonstrate that the defendant poses a credible threat to the safety of another. Again, we don't need to show that that's true in all applications. This is a facial challenge here. One application, as my friend recognized, defeats these challenges. And again, in many applications, when a court specifically enjoins the use of force, it's because the court found that there is a risk that force will be used in the future. Do you agree that we don't need to rely on the common law principles governing injunctive relief, as the Fifth Circuit did? Or would you suggest that's an important or relevant part of the analysis? I don't think this court needs to rely on it. But I think, again, we can look specifically at Utah law. And again, we can look at many other of these state provisions, the way that these protective orders actually happen. It does entail a risk. And I think the historical analogs of surety laws and going-arm laws are especially appropriate here. The Supreme Court in Rohimi didn't identify that the orders themselves included a finding of future dangerousness in the order. It was the fact that the court entered the order that indicated that the defendant was dangerous. And that's what we have in many of these protective orders. Maybe not all, but we don't need all. But in many protective orders, the fact that the court enters a protective order against someone and enjoins them from using force itself indicates that that person poses a credible threat to the safety of another. So, sorry, long answer. No, it's not required. But it is, I think, a helpful point. You had a third thing you said. The third point is that there's a historical tradition, a Second Amendment principle, that Congress can disarm those it deems pose a special danger of misuse. Historically, that has been loyalists or minors or vagrants or those intoxicated or those of unsound mind. And that has been accepted from the founding. Because of the risk of future dangerousness. Because they pose a special danger of misuse, exactly. But it's based on the risk in the future, not what's happened in the past. Correct, correct. And I think Congress has made that determination here, that those who are under a protective order, prohibiting them from stalking, terrorizing an intimate partner, a domestic abuse protective order, pose a special danger of misuse. So that is just an instance of a category of persons that Congress, under the Second Amendment, can disarm. And it's important that this is only temporary. It's a temporary restriction while the protection order is pending. And under Utah law, that's 150 days up to three years. But it is a temporary provision that disarms them while that order is in place. But under any of those prongs, we can see that Subsection 2 is constitutional in at least some of its applications. And that's all that this court needs to find. Any one of those defeats these facial challenges. If there are no other questions, I would ask this court to affirm. Thank you, counsel. Thank you. Face submitted, counselor excused.